# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

BRITTANY BONGIOVANNI, et al.,

        Plaintiffs,

vs.                                                    Case No.  3:22-cv-237-MMH-MCR

LLOYD AUSTIN, III, in his official
capacity as Secretary of Defense,
U.S. Department of Defense, et al.,

        Defendants.

_____/

# O R D E R

**THIS CAUSE** is before the Court on Plaintiffs' Motion for Administrative Stay, Temporary Restraining Order and Preliminary Injunction and Memorandum in Support Thereof (Doc. 13; Motion), filed March 8, 2022.[1] With the agreement of the parties, the Court construed the Motion as seeking a preliminary injunction, rather than a temporary restraining order, and set an agreed upon briefing schedule.  See Clerk's Minutes (Doc. 23; Status Conference) at 1.  Defendants Secretary of Defense Lloyd Austin, III, Secretary of the Air Force Frank Kendall, Commandant of the Coast Guard Karl Schultz, Secretary of the Navy Carlos Del Toro, and Secretary of the Army Christine

---

[1]  In support of their Motion, Plaintiffs referred to the exhibits filed with their Complaint for Declaratory and Injunctive Relief (Doc. 1; Original Complaint).

Wormuth—all sued in their official capacities—timely filed a response in opposition to the Motion.  <u>See</u> Defendants' Opposition to Movants' Request for a Preliminary Injunction (Doc. 31; Response), filed March 28, 2022.  Plaintiffs then filed a reply.  <u>See</u> Plaintiffs' Reply Brief (Doc. 33; Reply), filed April 4, 2022.  On April 14, 2022, the Court held a hearing on the Motion at which the parties argued their respective positions.  <u>See</u> Clerk's Minutes (Doc. 40; Hearing Minutes).  <u>See generally</u> Transcript of Hearing (Doc. 41; Transcript), filed April 15, 2022.  At the Court's request, the parties filed supplemental briefing on April 22, 2022.  <u>See</u> Plaintiffs' Supplemental Brief (Doc. 43; Plaintiffs' Supp.); Defendants' Supplemental Memorandum on Venue and Severance Issues (Doc. 44; Defendants' Supp.).  Accordingly, this matter is ripe for review.

## I.    Background[2]

This case arises from the Secretary of Defense's August 24, 2021 mandate that all members of the armed forces be vaccinated against COVID-19 (the Vaccine Mandate).  <u>See</u> Original Complaint, Ex. 2: Pentagon Memorandum Dated Aug. 24, 2021 (Doc. 1-2; Vaccine Memo) at 2.  In his August 2021 Vaccine Memo, the Secretary of Defense advised that he "determined that mandatory vaccination against coronavirus disease 2019 (COVID-19) is necessary to

---

[2] The Court's citations to page numbers in documents in the record refer to the CM-ECF-stamped page numbers located at the top of each page, rather than a document's internal page numbers, if any.

protect the Force and defend the American people." Id.; see Response, Ex. 9: Declaration of William Merz (Doc. 31-10; Merz Decl.) at 20–27; Response, Ex. 3: Declaration of Major Scott Stanley (Doc. 31-4; Stanley Decl.) at 5. Servicemembers refusing to comply with the Vaccine Mandate may face administrative and disciplinary consequences, but "the vaccine will not be forcibly administered to any member who refuses." Response, Ex. 8: Declaration of David J. Furness (Doc. 31-9; Furness Decl.) at 4 n.2; Merz Decl. at 4 n.3.

The Department of Defense allows the service branches to grant individual servicemembers three types of exemptions from the Vaccine Mandate. See Vaccine Memo at 2. The three types of exemptions are medical, administrative, and religious. See Response, Ex. 6: Declaration of Colonel Artemio C. Chapa (Doc. 31-7; Chapa Decl.) at 6; Merz Decl. at 8; Furness Decl. at 9–10. As relevant here, the Army, Air Force, Marine Corps, and Navy[3] provide processes for servicemembers seeking exemptions from the Vaccine Mandate based upon religious beliefs through religious accommodation requests (RAR(s)). See Original Complaint, Ex. 8: FRAGO 5 TO HQDA EXORD 225-21 COVID-19 Steady State Operations (Doc. 1-8; Army Implementation) at 7–8, 14; Original Complaint, Ex. 7: COVID-19 Mandatory Vaccination

---

[3] Each Plaintiff seeking preliminary injunctive relief in the Motion is a member of one of these four branches of the military. See Motion at 2–4.

Implementation Guidance for Service Members (Doc. 1-7; Air Force Implementation) at 19–21; Original Complaint, Ex. 9: Mandatory COVID-19 Vaccination of Marine Corps Active and Reserve Components (Doc. 1-9; Marine Corps Implementation) at 10; Original Complaint, Ex. 10: Department of Navy Mandatory COVID-19 Vaccination Policy (Doc. 1-10; Navy Implementation) at 5.

Plaintiffs, eighteen servicemembers from each branch of the armed forces, initiated this action by filing their Original Complaint on March 2, 2022. See generally Original Complaint; First Corrected Complaint for Declaratory and Injunctive Relief (Doc. 25; Corrected Complaint) ¶¶ 1, 8–27. In the operative Corrected Complaint, Plaintiffs allege that they are subject to the Vaccine Mandate, see Corrected Complaint ¶ 1 & n.1, 39, and all of the Plaintiffs other than Sgt. William Freincle assert that they have a sincere religious objection to receiving the COVID-19 vaccine. See id. ¶¶ 8–27.[4] These Plaintiffs filed RARs with their respective services. See id.

Plaintiffs' claims in this action generally fit into two categories. In the first category are Plaintiffs' causes of action related to their religious beliefs. Plaintiffs assert that Defendants are using the threat of disciplinary action to

---

[4] In a supplemental declaration submitted with the Reply, Sergeant Freincle, for the first time, attempted to raise an objection based upon his beliefs. See Reply, Ex. 1 (Doc. 33-1; Plaintiffs' Supp. Decls.) at 2. However, observing that Sergeant Freincle could not amend the Corrected Complaint through argument, the Court declined to consider his newly raised moral objection to the Vaccine Mandate. See Transcript at 29–33.

coerce Plaintiffs into receiving a vaccine that violates their religious beliefs.  <u>See</u> <u>id.</u> ¶¶ 1, 3, 76–78.  Plaintiffs also contend that Defendants' RAR processes merely "rubber stamp[]" the denials of their RARs.  <u>Id.</u> ¶¶ 44, 81.  In Count I, Plaintiffs allege that the Vaccine Mandate and the process for RARs violate the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, <u>et seq.</u>  <u>See</u> Corrected Complaint ¶¶ 99–101.  In Count II, Plaintiffs assert that the Vaccine Mandate and the process for RARs violate the Free Exercise Clause of the First Amendment to the U.S. Constitution.  <u>See</u> <u>id.</u> ¶¶ 115–19.  And, in Count III, Plaintiffs allege that the process for RARs violates the Due Process Clause of the Fifth Amendment.  <u>See</u> <u>id.</u> ¶¶ 123–25.  In the second category are Plaintiffs' causes of action relating to the Administrative Procedure Act (APA) and public health and informed consent laws.  These allegations are found in Counts IV–VI of the Corrected Complaint.  <u>See</u> <u>id.</u> ¶¶ 129, 140–41, 148–49.  Because the Motion before the Court seeks preliminary injunctive relief based only on Plaintiffs' religious exercise claims found in Counts I, II, and III of the Corrected Complaint, the Court need not elaborate on the claims in Counts IV–VI at this time.  <u>See</u> Motion at 12–20.

On March 8, 2022, Plaintiffs filed this Motion seeking preliminary injunctive relief for seven Plaintiffs, Lt. Brittany Bongiovanni, Sgt. William Freincle, Maj. Nicholas Harwood, Cdr. Lucian Kins, T.Sgt. Joseph Mazure, Lt. Cdr. Jacob Montoya, and Maj. Tammara Nykun (collectively, "Movants").  <u>See</u>

generally Motion; see also Status Conference at 1.  Movants originally asked the Court to stay the implementation of the Vaccine Mandate, enjoin Defendants from enforcing the mandate or administering the vaccine to Plaintiffs, and enjoin Defendants from "taking any adverse or retaliatory action against any Plaintiffs as a result of, arising from, or in conjunction with the Plaintiffs' religious accommodation requests or denials, or for pursuing this action, or any other action for relief from Defendants' constitutional, statutory, or regulatory violations."  Motion to Supplement, Ex. 1: Text of Proposed Order (Doc. 26-1; Proposed Order) at 1–2.  In their Reply, however, Movants narrow their requested relief, asking the Court to grant an injunction "preventing Defendants from discharging or disciplining [Movants], pending resolution of these matters on the merits."  Reply at 1.

The Court held a hearing on the Motion on April 14, 2022.  For the reasons stated on the record at the hearing, the Court denied the Motion as to Sergeant Freincle for lack of standing as to the claims in Counts I–III.  See Hearing Minutes at 1; Transcript at 31–33.[5]  With regard to the other Movants, the Court took the Motion under advisement and requested supplemental briefing on venue, severance, and the first-to-file rule.  See Hearing Minutes at 1.

---

[5] Sergeant Freincle lacks standing to challenge the Vaccine Mandate under RFRA or the Free Exercise Clause because, in the Corrected Complaint, he did not allege that he holds a sincere religious objection to the COVID-19 vaccine.  See Transcript at 29–33.  Similarly, he lacks standing to challenge the RAR system on due process grounds because he did not request a religious accommodation.  See id.

Specifically, the Court asked the parties to address whether Plaintiffs should be severed by individual or by branch of the military and whether venue is proper for Air Force Technical Sergeant Mazure's claims. See Transcript at 69–71. The parties filed their supplemental briefs regarding venue and severance on April 22, 2022. See Plaintiffs' Supp.; Defendants' Supp. With the denial of the Motion as to Sergeant Freincle, six Movants are before the Court seeking preliminary injunctive relief.[6] Two are members of the Air Force, one is a member of the Marine Corps, and three serve in the Navy.

Joseph Michael Mazure is a technical sergeant in the Air Force who is stationed at Hurlburt Field, Florida, and resides in Santa Rosa County, Florida. Original Complaint, Ex. 1: Plaintiffs' Declarations and RAR/Appeal Denials (Doc. 1-1; Plaintiffs' Decls.) at 94. Technical Sergeant Mazure asserts that he has a religious objection to receiving the COVID-19 vaccine. Id. The Air Force denied his initial RAR on December 5, 2021, and his appeal on January 31, 2022. Id. at 95–96. Because Technical Sergeant Mazure did not receive the vaccine or an exemption to the Vaccine Mandate, the Air Force issued him a Letter of Reprimand. See Plaintiffs' Supp. Decls. at 16. The Air Force is not allowing him to participate in any official travel or in training or deployment

---

[6] In their Reply, Movants mention that two other Plaintiffs, Lt. Col. Torrey Hamilton and Capt. Kyle Singletary, have had their RAR appeals denied since the Motion was filed. See Reply at 5. However, they are not among the Movants for whom relief is sought in the Motion. If these Plaintiffs wish to seek preliminary injunctive relief on their own behalf, they must file a proper motion requesting such relief.

opportunities necessary to advance his career.  Plaintiffs' Decls. at 97.  If Technical Sergeant Mazure were to choose to voluntarily retire now, he would have to pay back a reenlistment bonus and would lose a substantial amount of retirement benefits that he could earn with a longer period of service.  Id.

Tammara E. Nykun is a major in the Air Force domiciled in Tampa, Florida.  Id. at 119.  Seeking an exemption from the Vaccine Mandate, Major Nykun submitted an RAR, which the Air Force denied on October 8, 2021.  Id. at 119–20.  Faced with potential disciplinary action for refusing the vaccine, Major Nykun submitted retirement paperwork on November 10, 2021, and resubmitted the paperwork on January 19, 2022.  Id. at 124.  The Air Force denied her RAR appeal on December 9, 2021.  See id. at 120; Response, Ex. 22: Administrative Record for Nykun (Doc. 31-21; AR Nykun) at 36.  Because Major Nykun submitted her retirement request while her appeal was still pending, "she was given a temporary administrative exemption and [was] not required to receive the COVID-19 vaccine during the remainder of her service." Response, Ex. 17: Declaration of Brigadier General John D. McKaye (Doc. 31-18; McKaye Decl.) at 4, 9.  The Air Force placed Major Nykun on terminal leave on February 7, 2022, and she remained in that status until her retirement became effective on May 1, 2022.  See id. at 9.  Because she retired early, Major Nykun will not receive full retirement benefits and will not receive TRICARE or retirement pay until the age of 57.  Plaintiffs' Decls. at 125.

Maj. Nicholas C. Harwood is a member of the Marine Corps domiciled in Volusia County, Florida. Id. at 47. He submitted an RAR that the Marine Corps denied on September 21, 2021. Id. The Marine Corps denied the appeal of the denial of his RAR on December 7, 2021. Id. Since the denial of the appeal, the Marine Corps removed Major Harwood from his position as the executive officer of his battalion. Id. at 50. Major Harwood received a Report of Misconduct and expects to face a Board of Inquiry that will decide whether he should be separated from the Marine Corps. See Motion, Ex. 1: Supplemental Declaration of Major Nicholas C. Harwood (Doc. 13-1) at 2–3. If separated, he will have no retirement, GI Bill, or medical benefits. Plaintiffs' Decls. at 51. Major Harwood is a named plaintiff in an ongoing lawsuit pending in the Northern District of Florida which also asserts challenges to the Vaccine Mandate. See Motion at 4 n.2. See generally Coker v. Austin, No. 3:21-cv-01211-AW-HTC (N.D. Fla.). Specifically, in that proceeding, Major Harwood raises informed consent and APA challenges to the Vaccine Mandate similar to the claims in Counts IV–VI of this action. See Motion at 4 n.2.

Brittany Bongiovanni is a lieutenant junior grade in the Navy. Plaintiffs' Decls. at 3. She is domiciled in Duval County, Florida. Id. She filed an RAR to be exempt from having to receive the COVID-19 vaccine, and the Navy denied the request on November 28, 2021. See id. at 5. The Navy denied her RAR appeal on January 26, 2022. Id. Because Lieutenant Junior Grade Bongiovanni

did not receive the vaccine or an exemption to the Vaccine Mandate, the Navy removed her from a school program one month before the program ended and has forced her to show cause for why she should be retained in the Navy.  See id. at 5–7.  If separated, Lieutenant Junior Grade Bongiovanni may have to pay back the cost of her Naval Academy education.  Id. at 7.

Lucian Damian Kins is a commander in the Navy and is domiciled in Duval County, Florida.  Id. at 68.  Commander Kins alleges that he has religious objections to the COVID-19 vaccine and to COVID-19 polymerase chain reaction (PCR) tests.  Id. at 69.  The Navy denied his initial RAR on October 22, 2021, and his appeal on January 24, 2022.  Id.  In response to Commander Kins's refusal to take COVID-19 tests and to receive the vaccine, the Navy initiated a non-judicial punishment proceeding, removed him from his position as the executive officer of his ship, and gave him a Report of Misconduct that recommends his separation from the Navy.  See id. at 72. Commander Kins expects to face a Board of Inquiry that may separate him from the Navy.  See id.  Commander Kins laments that, if separated, he will likely lose millions of dollars in pay, housing allowance, and retirement benefits, in addition to losing the opportunity to serve his country's national security.  See id.

Jacob M. Montoya is a lieutenant commander in the Navy, domiciled in Fernandina Beach, Florida.  Id. at 111.  Lieutenant Commander Montoya asserts a religious objection to the COVID-19 vaccine.  Id. at 111–12.  The Navy

denied his initial RAR on August 20, 2021, and his appeal on January 23, 2022.[7] Id. at 112.   Because Lieutenant Commander Montoya did not receive the COVID-19 vaccine or an exemption to the Vaccine Mandate, the Navy removed him from his position as the executive officer of his submarine, issued a Report of Misconduct, and may subject him to a Board of Inquiry.  See id. at 113.  If separated, Lieutenant Commander Montoya will lose retirement and medical benefits and will have to pay back portions of incentive pay that he received. See id. at 113–14.

After Plaintiffs filed this action, the U.S. District Court for the Northern District of Texas certified a class of "all Navy servicemembers subject to the vaccine mandate who have submitted religious accommodation requests."  See U.S. Navy SEALs 1–26 v. Austin, No. 4:21-CV-01236-O, 2022 WL 1025144, at *1, *3, *13 (N.D. Tex. Mar. 28, 2022).  After certifying the class, the court in U.S. Navy Seals 1–26 issued a preliminary injunction enjoining the Department of Defense and the Navy from enforcing the Vaccine Mandate as to the class members.  See id. at *13–14.  By virtue of this injunction, the Navy is, at this time, prohibited from enforcing the Vaccine Mandate as to the Naval servicemember Plaintiffs in this action.

---

[7] In his declaration, Lieutenant Commander Montoya identified the date of the appeal denial as occurring in 2021.  The Court assumes that this is a typographical error.

With this background, the Court considers the Movants' request for preliminary injunctive relief.

## II.   Legal Standard

A preliminary injunction is an extraordinary and drastic remedy.  See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998); see also Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."); Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1300 (11th Cir. 2001).  Indeed, it "is a powerful exercise of judicial authority in advance of trial." Ne. Fla. Chapter of Ass'n of Gen Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1284 (11th Cir. 1990).  "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter, 555 U.S. at 20. The Eleventh Circuit has described the heavy burden on a party seeking preliminary injunctive relief as follows:

> A district court may grant a preliminary injunction only if the moving party establishes that: (1) [he] has a substantial likelihood of success on the merits; (2) [he] will suffer an irreparable injury unless the injunction is granted; (3) the harm from the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) the injunction would not be adverse to the public interest.

Gonzalez v. Governor of Georgia, 978 F.3d 1266, 1270–71 (11th Cir. 2020); see also Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). However, the court also instructed that "the third and fourth factors merge when, as here, the Government is the opposing party." Gonzalez, 978 F.3d at 1271 (internal quotations and citation omitted).

The movant, at all times, bears the burden of persuasion as to each of these requirements. See Ne. Fla., 896 F.2d at 1285. In deciding whether a party has met its burden, "[a] district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (internal quotations and citation omitted); see also Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc., 304 F.3d 1167, 1171 (11th Cir. 2002) ("Preliminary injunctions are, by their nature, products of an expedited process often based upon an underdeveloped and incomplete evidentiary record."). Notably, a party's failure to establish any one of the essential elements will warrant denial of the request for preliminary injunctive relief and obviate the need to discuss the remaining elements. See Pittman v. Cole, 267 F.3d 1269, 1292 (11th Cir. 2001) (citing Church v. City of Huntsville,

30 F.3d 1332, 1342 (11th Cir. 1994)); <u>Del Monte Fresh Produce Co. v. Dole Food Co.</u>, 148 F. Supp. 2d 1326, 1339 n.7 (S.D. Fla. 2001).[8]

## III.   Discussion

For the reasons discussed below, the Court finds that the Motion for preliminary injunctive relief is due to be denied as to all Movants other than Technical Sergeant Mazure.[9]

### A.   Major Nykun

Defendants argue that Major Nykun lacks standing to seek a preliminary injunction because she has voluntarily retired and faces no future harm from the Vaccine Mandate. <u>See</u> Response at 17–18. In their Reply, Movants argue that Major Nykun's retirement was not voluntary and that she has an injury redressable through a preliminary injunction. <u>See</u> Reply at 7–9. Specifically,

---

[8] Although decisions of other district courts are not binding, they may be cited as persuasive authority. <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

[9] Movants and Defendants devote significant portions of their briefing to the question of justiciability. <u>See</u> Motion at 6–12; Response at 8–15; Reply at 3–6. Courts traditionally hesitate to "review internal military affairs." <u>Mindes v. Seaman</u>, 453 F.2d 197, 199–201 (5th Cir. 1971). This reluctance is prudential and based on a "judicial policy akin to comity." <u>Id.</u> at 199. Here, the Court concludes that certain of these Movants are not currently entitled to the preliminary injunctive relief they seek. The analysis supporting this conclusion does not require the Court to "review internal military affairs," to "interfer[e] with the military establishment," or to "second-guess judgments requiring military expertise." <u>Id.</u> Therefore, at this time, the Court declines to determine the justiciability of Movants' underlying claims. Instead, the Court will hear oral argument on this issue on behalf of the single Movant in whose favor preliminary injunctive relief may be proper at a hearing set by this Order.
    In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Movants assert that "court action finding that Defendants' denial of her religious accommodation likely violated RFRA would enable her to avoid forced early retirement currently scheduled for May 1, 2022." Id. at 9.

An argument asserting a lack of standing is a challenge to the Court's subject matter jurisdiction. Townsend v. U.S. Dep't of Agric., No. 2:05-cv-439-FtM-99DNF, 2007 WL 177857, at *1–2 (M.D. Fla. Jan. 19, 2007); Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005) (noting that standing "implicates [the Court's] subject matter jurisdiction"). Federal courts are courts of limited jurisdiction "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (quoting Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994)). Article III of the Constitution, by its plain language, limits the jurisdiction of federal courts (the "judicial power" of the courts) to the consideration of cases and controversies. Kelly v. Harris, 331 F.3d 817, 819 (11th Cir. 2003) (citing U.S. Const. art. III, § 2, cl. 1; Ala. Power Co. v. U.S. Dep't of Energy, 307 F.3d 1300, 1308 (11th Cir. 2002)). The doctrine of standing "stems directly from Article III's 'case or controversy' requirement," Bochese 405 F.3d at 974, and ensures that "federal courts do not exceed their authority," Spokeo, Inc. v. Robins, 578 U.S. 856, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016). Indeed,

standing "is 'perhaps the most important' jurisdictional doctrine." <u>Bochese</u>, 405 F.3d at 974 (quoting <u>Bischoff v. Osceola County</u>, 222 F.3d 874, 877–78 (11th Cir. 2000)) (additional citations omitted).  In the absence of standing, a federal court lacks subject matter jurisdiction and is "powerless" to act. <u>See id.</u>; <u>see also</u> <u>Univ. of S. Ala.</u>, 168 F.3d at 410 ("Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.").

In this action, Major Nykun, "as the party invoking federal jurisdiction, bears the burden of establishing" that she has standing to pursue the claims she alleges in the Corrected Complaint.  <u>Spokeo</u>, 136 S. Ct. at 1547.  The Eleventh Circuit has unequivocally instructed that "[u]nder settled precedent, the 'irreducible constitutional minimum' of standing consists of three elements: the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it."  <u>See</u> <u>Trichell v. Midland Credit Mgmt., Inc.</u>, 964 F.3d 990, 996 (11th Cir. 2020) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560–61 (1992)).  To carry her burden, Major Nykun must establish each element of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, <u>i.e.</u>, with the manner and degree of evidence required at the successive stages of litigation."  <u>See</u> <u>Bischoff</u>, 222 F.3d at 878 (quoting <u>Lujan</u>, 504 U.S. at 561).

Notably, the Supreme Court has instructed that "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2208, 2210–11 (2021). As relevant to the instant Motion seeking injunctive relief, "to have standing to obtain forward-looking relief, a plaintiff [Major Nykun] must show a sufficient likelihood that [s]he will be affected by the allegedly unlawful conduct in the future." Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1283 (11th Cir. 2001).

Here, Major Nykun does not have standing to seek a prospective preliminary injunction because she faces no threat of imminent, future harm that could be redressed through injunctive relief. Major Nykun made, what was no doubt, the very difficult decision to submit retirement paperwork instead of waiting for the Air Force to resolve her RAR appeal and possibly subject her to disciplinary action. See Plaintiffs' Decls. at 120, 124. As a result of that decision, the Air Force placed Major Nykun on terminal leave and gave her an administrative exemption from the Vaccine Mandate. See McKaye Decl. at 4, 9. Her retirement became effective on May 1, 2022. See id. Based upon Major Nykun's allegations in the Corrected Complaint, the infringement on her free exercise of religion occurred in the past when she was forced to choose between violating her conscience, facing disciplinary action, or retiring. Moreover, while

she seeks an order "preventing Defendants from discharging or disciplining [her], pending resolution of these matters on the merits," Reply at 1, such an order, even if entered before May 1, 2022, would not have benefited her as she faced no threat of discharge or discipline.

At the hearing, Movants argued that an order from this Court could help to undo Major Nykun's retirement. See id. at 9; Transcript at 20. Although Major Nykun presented no evidence in support of this assertion, at the hearing, Defendants' counsel conceded that Major Nykun could request to withdraw her resignation. See Transcript at 22–23. Movants assert that Major Nykun would request to withdraw her resignation if the Court entered an order requiring the Air Force (1) to accept a request to withdraw her retirement, (2) to give fair consideration to such a request, or (3) not to decline the request in retaliation for her RAR and lawsuit. See id. at 25–27. But, these requests for relief are not properly before the Court because they are not found in the Corrected Complaint, the Motion, the Proposed Order, or the Reply. In addition, an order granting relief on at least the first two of these requests would be a mandatory injunction that would go "beyond simply maintaining the status quo" and, thus, is "particularly disfavored." Powers v. Sec'y, Fla. Dep't of Corrs., 691 F. App'x 581, 583 (11th Cir. 2017) (per curiam) (quoting Martinez v. Mathews, 544 F.2d

1233, 1243 (5th Cir. 1976)).[10]   Even if the third request were cast as a prohibitory injunction, it is entirely speculative that Major Nykun would have requested to withdraw her resignation and that the Air Force would not deny that request for other reasons.  See Duty Free Ams., Inc. v. Estee Lauder Cos., Inc., 797 F.3d 1248, 1272 (11th Cir. 2015) ("[The plaintiff] claimed at oral argument that it would suffer injury if it resumes purchasing from [the defendant] and becomes subject to [the defendant's] requirements.  This cannot be characterized as a 'concrete' or 'actual' injury in fact because, by its very terms, it has not yet occurred, and indeed may never occur.").

More importantly, these requests for relief still ignore the fact that the alleged irreparable harm—the violation of her right to religious freedom and due process—traceable to Defendants' conduct is alleged to have occurred in the past when Major Nykun was forced to choose between retiring, facing disciplinary action, or violating her religious beliefs.  Her retirement, and the monetary loss resulting from it, while certainly concrete, is a consequence of that past harm—the choice Defendants required her to make potentially in violation of her rights.  Her retirement is not a threatened future injury.  See id. at 1270–72 (holding that the plaintiff did not have standing to seek

---

[10]   The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

prospective injunctive relief when the defendant's requirements had allegedly caused injury to the plaintiff in the past but the plaintiff was no longer subject to the requirements and did not allege any actual and imminent future injury); Shotz v. Cates, 256 F.3d 1077, 1082 (11th Cir. 2001) ("Here, the plaintiffs do not allege a real and immediate threat of future discrimination. The complaint contains only past incidents of discrimination. . . . Accordingly, the plaintiffs do not have Article III standing [to seek injunctive relief]."). Major Nykun has no standing to seek prospective injunctive relief because she is no longer subject to Defendants' Vaccine Mandate or the RAR process. Therefore, the Motion as to Major Nykun is due to be denied because she does not have standing to seek prospective injunctive relief.

## B. Major Harwood

Defendants argue that Major Harwood cannot show a likelihood of success because his claim should be dismissed for improper claim-splitting because he is a plaintiff in a previously filed case, Coker v. Austin, No. 3:21-cv-1211-AW-HTC (N.D. Fla.), pending in the Northern District of Florida. See Response at 15. Defendants assert that this case and Coker involve identical parties and arise from the same nucleus of operative facts concerning the Marine Corps' order that Major Harwood get fully vaccinated against COVID-19. See id. at 16. Movants disagree. They argue that Major Harwood is not improperly splitting his claims because, in Coker, Major Harwood is alleging

that the Vaccine Mandate violates informed consent laws and the APA but, here, Major Harwood is alleging that the denial of his RAR violated his rights under RFRA and the First Amendment. <u>See</u> Transcript at 7–8. According to Movants, Major Harwood is seeking to have the Vaccine Mandate itself declared unlawful in <u>Coker</u>, but, here, he is asking the Court to order the Marine Corps to engage in an individualized assessment of his RAR. <u>See</u> <u>id.</u> at 10. Movants also argue that Major Harwood would be denied an opportunity to bring his religious exercise claims if the Court were to dismiss them for improper claim-splitting. <u>See</u> <u>id.</u> at 11–12.

A district court has discretion to dismiss a case for improper claim-splitting because of the district court's authority to manage its own docket. <u>See</u> <u>Vanover v. NCO Fin. Servs., Inc.</u>, 857 F.3d 833, 837–38 (11th Cir. 2017). "The 'claim splitting doctrine' applies where a second suit has been filed before the first suit has reached a final judgment." <u>Id.</u> at 840 n.3 (quoting <u>Zephyr Aviation III, L.L.C. v. Keytech Ltd.</u>, No. 8:07-CV-227-T-27TGW, 2008 WL 759095, at *6 (M.D. Fla. Mar. 20, 2008)). The Eleventh Circuit has instructed that "[i]t is well settled that a plaintiff 'may not file duplicative complaints in order to expand [his] legal rights'" or "present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails." <u>Id.</u> at 841 (first alteration in original) (quoting <u>Greene v. H & R Block E. Enters., Inc.</u>, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010)).

To determine whether improper claim-splitting has occurred, a district court should consider "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." Id. at 841–42 (quoting Khan v. H & R Block E. Enters., Inc., No. 11-20335-Civ, 2011 WL 3269440, at *6 (S.D. Fla. July 29, 2011)). Importantly, "[s]uccessive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts." Id. at 842. A court should make this determination "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." Id. (quoting Petro-Hunt, L.L.C. v. United States, 365 F.3d 385, 396 (5th Cir. 2004)).

In Vanover, the plaintiff argued that her debt collection claims in two successive lawsuits (Vanover I and Vanover II) were based on different facts and led to different legal causes of action. See id. at 842. The Eleventh Circuit rejected this "artificially narrow" distinction because "all of the alleged wrongs . . . occurred consecutively in time and prior to filing the complaint in Vanover I; hence, the collection efforts which form the basis of Vanover I and Vanover II arise from the same transaction or series of transactions." Id. at 842–43. The court further explained, "Stated differently, the factual bases for both lawsuits

are related in time, origin, and motivation, and they form a convenient trial unit." Id. The court concluded,

> [T]he addition of separate causes of action in Vanover II does not prevent application of the claim-splitting doctrine. To rule otherwise would defeat the objective of the claim-splitting doctrine to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket.

Id.

Here, the Court finds that Major Harwood is not likely to succeed on the merits of his claim in this action because he appears to be engaged in improper claim-splitting. The Coker action pending in the Northern District of Florida involves identical parties, Major Harwood, the Secretary of Defense, and the Secretary of the Navy. See Second Amended Complaint for Declaratory and Injunctive Relief, Coker v. Austin, No. 3:21-cv-01211-AW-HTC (N.D. Fla.) (Doc. 56) (Coker Complaint) ¶¶ 20, 31, 34. And both this case and the Coker case arise from the same transaction or series of transactions. Although Major Harwood brings new causes of action under RFRA and the First Amendment in this case, these causes of action arise out of the same nucleus of operative facts—the decision of the Secretary of Defense to impose the Vaccine Mandate and the Marine Corps' enforcement of the Vaccine Mandate. See Corrected Complaint ¶¶ 1–7; Coker Complaint ¶¶ 1, 112, 118, 122, 144–45; Vanover, 857 F.3d at 842–43. The cases are related in time. The Marine Corps denied Major

Harwood's RAR on September 21, 2021, before the Coker plaintiffs filed their initial complaint on October 6, 2021. See Plaintiffs' Decls. at 47; Complaint for Declaratory and Injunctive Relief, Coker v. Austin, No. 3:21-cv-01211-AW-HTC (N.D. Fla.) (Doc. 1). The Marine Corps denied his RAR appeal on December 7, 2021, before the Coker plaintiffs filed the currently operative complaint on December 10, 2021. See Coker Complaint ¶ 20; Plaintiffs' Decls. at 48. Thus, Major Harwood could have brought his claims in the Coker action. Treating these causes of action as one unit also likely conforms to the parties' expectations because the other Plaintiffs in this case did bring their informed consent, APA, and religious exercise claims together in one suit. See Corrected Complaint ¶ 1.

The origin and motivation for these cases are also similar. In this case and in Coker, Major Harwood is seeking to enjoin the Department of Defense and the Marine Corps from requiring him to receive the COVID-19 vaccine as required by the Vaccine Mandate. See Corrected Complaint ¶ 6; Coker Complaint ¶ 1. Movants argue that the operative complaint in Coker challenges the Vaccine Mandate itself while Major Harwood's allegation here is that the RAR process is unlawful regardless of whether the underlying mandate is lawful. See Transcript at 7–8. Notably, Movants do not draw that distinction in their Corrected Complaint. In the first paragraph of the Corrected Complaint, they state that the "vaccine mandate . . . is unconstitutional because

it violates" the First Amendment and RFRA and "is also unlawful insofar as it violates federal statutes" regarding informed consent, public health, and administrative procedure.  Corrected Complaint ¶ 1 (emphasis added).  Even if the Court were to recognize a distinction between the Vaccine Mandate itself and the RAR process, the origin and motivation of the cases would still be the same.  The Vaccine Mandate at issue in <u>Coker</u> requires Major Harwood to get vaccinated, and the denial of his RAR at issue here requires him to get vaccinated.  Movants argue that Major Harwood is asking this Court simply to order the Marine Corps to engage in an individualized assessment of his RAR. <u>See</u> Transcript at 10.  But that is not the relief that he requests in the Corrected Complaint or in the Motion.  <u>See</u> Corrected Complaint ¶¶ 6, 110, 120; Motion at 2, 4; Proposed Order at 1–2.  Here, as in <u>Vanover</u>, "the factual bases for both lawsuits are related in time, origin, and motivation, and they form a convenient trial unit." <u>Vanover</u>, 857 F.3d at 842–43.

The Court finds unpersuasive Movants' argument that a dismissal of this action would leave Major Harwood without an opportunity to bring his religious exercise claims.  <u>See</u> Transcript at 11–12.  Movants provide the Court with no reason for why these claims could not have been brought in <u>Coker</u> originally or through a timely motion to file an amended complaint.  <u>See</u> <u>id.</u> at 12, 15–16. Therefore, Major Harwood's claims are likely due to be dismissed for improper claim-splitting.  As such, Major Harwood is not able to demonstrate to this

Court that he is likely to succeed on the merits of his claims in this action, and as a consequence fails to establish that he is entitled to the extraordinary remedy of a preliminary injunction. The Motion is due to be denied as to him for this reason.

### C.     Lieutenant Junior Grade Bongiovanni, Commander Kins, and Lieutenant Commander Montoya

In their Reply, Movants inform the Court that Lieutenant Junior Grade Bongiovanni, Commander Kins, and Lieutenant Commander Montoya are members of the class certified by the district court in U.S. Navy SEALs 1–26, 2022 WL 1025144, at *1, *3, *13. The preliminary injunction in U.S. Navy SEALs 1–26 prohibits the Department of Defense and the Navy from enforcing the Vaccine Mandate as to the class members. See id. at *13–14. Because Defendants are enjoined from enforcing the Vaccine Mandate as to Lieutenant Junior Grade Bongiovanni, Commander Kins, and Lieutenant Commander Montoya, these Movants cannot show that they are facing imminent irreparable harm. See Faust v. Vilsack, No. 21-C-548, 2021 WL 2806204, at *3 (E.D. Wis. July 6, 2021) ("[C]ourts that have considered the effect of a prior ruling granting the same or similar relief have concluded that once another district court has entered the same relief, the plaintiffs were no longer able to demonstrate the irreparable harm that was needed to justify the extraordinary relief

requested."). Therefore, the Court will defer consideration of the Motion as to these Movants.[11]

### D.     Technical Sergeant Mazure

In response to Defendants' arguments concerning venue and severance, the Court questioned whether it had the power to rule on the Motion as to Technical Sergeant Mazure when he did not appear to satisfy the requirements of the venue statute. See Transcript at 35–37, 69. In their supplemental brief, Defendants represent that they would not contest venue if Plaintiffs are properly joined and provide the Court with authority for the proposition that venue is proper as to Technical Sergeant Mazure if he is properly joined with the other Plaintiffs. See Defendants' Supp. at 5 n.2. Because the Court concludes below that Technical Sergeant Mazure is properly joined with the

---

[11] Defendants urge the Court not to retain jurisdiction over Lieutenant Junior Grade Bongiovanni, Commander Kins, and Lieutenant Commander Montoya at all because they have not exhausted their intra-military remedies. See Transcript at 43. In support of this argument, Defendants cite Winck v. England, 327 F.3d 1296, 1307 n.10 (11th Cir. 2003). The relevant language in Winck states, "Under the rule of Hodges, once exhaustion has been determined to apply, the district court may not retain jurisdiction pending exhaustion of administrative remedies." Id. (citing Hodges v. Callaway, 499 F.2d 417, 421 (5th Cir. 1974)). This rule does not prohibit the Court from deferring consideration of the Motion as to Lieutenant Junior Grade Bongiovanni, Commander Kins, and Lieutenant Commander Montoya for two reasons. First, the rule only applies "once exhaustion has been determined to apply." Id. The Court has not yet determined whether exhaustion applies. Second, the Court in Winck clarified "that our opinion in Hodges v. Callaway, 499 F.2d 417, 419 & n. 5 (5th Cir. 1974), raised exhaustion sua sponte, referring to it as a 'jurisdictional problem.' However, '[w]hat we really determine is a judicial policy akin to comity.'" Winck, 327 F.3d at 1299 (quoting Mindes v. Seaman, 453 F.2d 197, 199 (5th Cir. 1971)). Thus, abstaining from deciding cases against the military is a matter of prudence, not of a court's power to hear the case.

other Plaintiffs who are members of the Air Force, the Court is satisfied that venue is proper as to him.

The parties have not yet had an opportunity to argue justiciability or the merits of the Motion as to Technical Sergeant Mazure. The Court anticipated setting a supplemental hearing on the Motion as to his request for preliminary injunctive relief in this action. But, in the interim, several Plaintiffs, including Technical Sergeant Mazure, filed a new motion seeking preliminary injunctive relief. See Plaintiffs' Motion for Preliminary Injunction and Memorandum in Support Thereof (Doc. 47), filed May 18, 2022. The Court struck that motion but expects that these Plaintiffs will file a renewed motion for preliminary injunctive relief. See Order (Doc. 48), filed May 20, 2022. Therefore, the Court will direct Technical Sergeant Mazure to advise the Court whether he intends to pursue preliminary injunctive relief through the currently pending Motion or through a renewed motion joined with other Plaintiffs.

## IV.  Severance

In addition to resolving the Motion, the Court must determine whether all eighteen Plaintiffs are properly joined in this single action. Defendants argue that the Court should sever and dismiss without prejudice all Plaintiffs except for the first-named Plaintiff. See Defendants' Supp. at 13; Response at 18. Defendants contend that severance by individual Plaintiff is appropriate

because the RFRA and Free Exercise Clause claims require a fact-specific inquiry into the circumstances of each Plaintiff.  <u>See</u> Defendants' Supp. at 6–7; Response at 19; Transcript at 48, 62–63.   Consequently, according to Defendants, each individual Plaintiff's claim will require different witnesses and documentary proof.   <u>See</u> Response at 19–20; Defendants' Supp. at 8. Defendants also assert that they will be unfairly prejudiced by joinder because the relevant individual circumstances of each Plaintiff may be lost in a joint case.  <u>See</u> Defendants' Supp. at 11.  According to Defendants, severance would not prejudice Plaintiffs because they could pursue their claims in individual actions.  <u>See</u> <u>id.</u> at 11–12.[12]

Plaintiffs, on the other hand, contend that the Court should not sever their claims because joinder is allowed by the Federal Rules of Civil Procedure (Rule(s)) and would promote the purposes of the Rules.  <u>See</u> Plaintiffs' Supp. at 1–2, 7.  With regard to their religious exercise claims, Plaintiffs assert that they challenge the same military policy to deny all RARs, including their own.  <u>See</u> <u>id.</u> at 8.  Plaintiffs contend that there will be common questions of fact or law because all Plaintiffs (except for Sergeant Freincle) have had their RARs denied by form letters with no individualized assessment.  <u>See</u> <u>id.</u> at 9.  Regarding the

---

[12] Defendants also argue that the Court "need not" reach severance because, whether joined or not, all Plaintiffs are due to be dismissed for failing to exhaust military remedies and for bringing claims that are not ripe.  <u>See</u> Defendants' Supp. at 2–5.  Because the Court determines that severance is appropriate as a preliminary matter of case management, the Court will order severance prior to resolving the exhaustion and ripeness issues.

informed consent and APA claims in Counts IV–VI of the Corrected Complaint, Plaintiffs argue that these claims involve the same military policy that mandates that servicemembers become vaccinated with an unapproved emergency use authorization vaccine.  See id. at 8.  Plaintiffs assert that they are all subject to the Vaccine Mandate and face discipline for refusing it.  See id. at 8–9.

Next, Plaintiffs argue that severance would not promote judicial economy because the separate cases would involve the same law and much of the same proof.  See id. at 12–13, 18; Transcript at 50–54, 60–61.  Plaintiffs maintain that Defendants will assert the same defenses as to all Plaintiffs whether severed or joined.  See Plaintiffs' Supp. at 13.  Plaintiffs also contend that joinder will promote the public interest by ensuring a single ruling on Plaintiffs' claims.  See id. at 14.  According to Plaintiffs, severance by individual would increase their expenses and delay relief.  See id. at 15.  Last, Plaintiffs argue that fundamental fairness requires joinder because they cannot afford lawyers and must rely on the limited number of attorneys who are willing to bring Plaintiffs' claims on a pro bono basis.  See id. at 15–16.

Rule 20(a)(1) provides:

Persons may join in one action as plaintiffs if:
(A)   they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B)     any question of law or fact common to all plaintiffs will arise
        in the action.

Rule 20(a)(1)(A)–(B). Courts are "strongly encouraged" to join claims, parties, and remedies, "and the [r]ules are construed towards 'entertaining the broadest possible scope of action consistent with fairness to the parties.'" See Edwards-Bennett v. H. Lee Moffitt Cancer & Research Inst., Inc., No. 8:13-cv-00853-T-27TGW, 2013 WL 3197041, at *1 (M.D. Fla. June 21, 2013) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966)).  Whether multiple claims arise from the same transaction, occurrence, or series of transactions or occurrences depends on whether a "logical relationship" exists between the claims.  See Alexander v. Fulton County, 207 F.3d 1303, 1323 (11th Cir. 2000), overruled on other grounds by Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003). "The 'logical relationship' standard is a 'loose' one that 'permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits.'"  Edwards-Bennett, 2013 WL 3197041 at *1; see also Bollea v. Clem, 937 F. Supp. 2d 1344, 1350–51 (M.D. Fla. 2013); Barber v. America's Wholesale Lender, 289 F.R.D. 364, 367 (M.D. Fla. 2013).  Notably, similar issues of liability alone are not sufficient to warrant joinder; the claims must also share operative facts.  See Edwards-Bennett, 2013 WL 3197041 at *2.

Regardless of its broad construction, however, Rule 20 "does not mandate joinder, and even when joinder is permissible, courts may refuse it or may sever

plaintiffs or claims." <u>Nelson v. Blue Eyed Holdings, Inc.</u>, No. 13-60569-CIV, 2013 WL 6238056, at *4 (S.D. Fla. Dec. 3, 2013) (citation omitted).  And, Rule 21 permits the Court to "sever any claim against a party."  Although Rule 21 generally relates to the misjoinder of parties, the severance provision "is not so limited."  <u>See</u> <u>Essex Ins. Co. v. Kart Constr., Inc.</u>, No. 8:14-cv-356-T-23TGW, 2015 WL 628782, at *5 (M.D. Fla. Feb. 12, 2015).  Indeed, "[a] district court has broad discretion when deciding whether to sever claims under Rule 21 and may consider factors such as judicial economy, case management, prejudice to parties, and fundamental fairness."  <u>Id.</u> (quoting <u>Potts v. B & R, LLC</u>, No. 8:13-cv-2896-T-27TGW, 2014 WL 1612364, at *3 (M.D. Fla. Apr. 21, 2014)); <u>see</u> <u>Torres v. Bank of Am., N.A.</u>, No. 8:17-CV-1534-T-26TBM, 2017 WL 10398671, at *2 (M.D. Fla. Oct. 6, 2017) (considering "(1) the interest of avoiding prejudice and delay; (2) ensuring judicial economy; (3) safeguarding principles of fundamental fairness; and (4) whether different witnesses and documentary proof would be required for plaintiffs' claims." (quoting <u>Hofmann v. EMI Resorts, Inc.</u>, 2010 WL 9034908, at *1 (S.D. Fla. July 21, 2010))).

Here, as an initial matter, the Court notes that Plaintiffs appear to satisfy the minimum requirements of Rule 20(a)(1).  Plaintiffs assert a right to relief arising out of the same transactions or series of transactions or occurrences.  The religious exercise claims in Counts I–III of the Corrected Complaint arise out of the Vaccine Mandate and the alleged policy of denying all or nearly all

RARs.  See Corrected Complaint ¶¶ 1, 88, 105, 117, 125.  The informed consent and APA claims in Counts IV–VI arise out of the Vaccine Mandate and the Department of Defense's subsequent guidance to treat vaccines labeled for emergency use as interchangeable with vaccines labeled as FDA-approved.  See id. ¶¶ 130–31, 135, 140, 149.  The claims also involve questions of law or fact common to all Plaintiffs.  A common question of fact will arise regarding the existence of the alleged policy of blanket denials of RARs.  The informed consent and APA claims will likely involve nearly identical facts for all Plaintiffs because those claims challenge the Vaccine Mandate itself and Department of Defense guidance applicable to all the services.  See Vaccine Memo at 2–3; Original Complaint, Ex. 11: Memorandum from Assistant Secretary of Defense (Doc. 1-11).

Although Plaintiffs satisfy the minimum requirements of Rule 20, the Court finds that, at this stage of the proceedings, the purposes of joinder weigh in favor of severing Plaintiffs according to the different branches of the military.  This case may end up requiring a fact-intensive inquiry into the individual circumstances and legal claims of individual Plaintiffs.  To succeed on a RFRA claim, each Plaintiff will have to show that he or she has a sincere religious conviction that has been burdened by the applicable Defendants' conduct.  See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 428 (2006).  If a Plaintiff does demonstrate that his or her sincere religious

convictions have been substantially burdened by the applicable Defendants, then the Defendants must demonstrate a compelling interest in enforcing their policy "'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 726–27 (2014) (quoting Gonzales, 546 U.S. at 430–31). Similarly, the Defendants will have to demonstrate that refusing to exempt each Plaintiff from the Vaccine Mandate is the least restrictive means to achieve their compelling government interests. See 42 U.S.C. § 2000bb-1(b).

As Defendants note, Plaintiffs have many differences that may be relevant under these legal standards. Plaintiffs have different ranks, jobs, and work environments. See Plaintiffs' Decls. at 3, 19, 23, 29, 33, 37, 39, 56, 68, 78, 87, 94, 98–99, 111, 119, 130, 140, 143, 145. They have different likelihoods of deployment. See id. at 19, 23, 33, 43, 87, 134. Two Plaintiffs are in different employment postures because they have submitted retirement paperwork. See id. at 25–26, 125. Some Plaintiffs have alleged specific reasons why there is no compelling interest in their vaccination; others have not. See id. at 88, 96, 135, 145. And, individual Plaintiffs have proposed different alternatives to vaccination. See id. at 48, 95, 134 (wearing masks); id. at 134 (handwashing and other hygienic practices); id. at 39, 44, 48, 98, 134 (social distancing and teleworking); id. at 44, 69 (testing and temperature checks); id. at 39, 112 (screening for preexisting immunity); id. at 71 (taking vitamins and other

treatments and maintaining physical fitness).  <u>But see id.</u> at 101–02 (objecting to masking, testing, and isolation as discriminatory against individuals with religious objections).

Plaintiffs argue that this particular RFRA case will not require the Court to engage in an individualized analysis because their religious exercise is being substantially burdened by an alleged common policy of denying all RARs.  Even assuming, <u>arguendo</u>, that Plaintiffs are correct that their religious exercise claims will focus on a common policy to deny all RARs, the different branches of the military present somewhat different inquiries.  Among the branches, the RAR processes differ.  <u>See</u> Response, Ex. 7: Declaration of Chaplain, Major Matthew J. Streett (Doc. 31-8; Streett Decl.) at 3–9 (Air Force); Furness Decl. at 11–18 (Marine Corps); Merz Decl. at 8–10 (Navy).  Because of the different processes, different officers in different locations denied Plaintiffs' RARs and appeals.  <u>See</u> AR Nykun at 23, 36 (Georgia and Washington, D.C.); Response, Ex. 23: Administrative Record for Mazure (Doc. 31-22) at 6, 73 (Florida and Washington, D.C.); Response, Ex. 21: Administrative Record for Harwood (Doc. 32-2) at 424, 433 (Virginia and Washington, D.C.); Response, Ex. 18: Administrative Record for Bongiovanni (Doc. 31-19) at 343, 356 (Washington, D.C.).  The number of religious exemptions and other exemptions granted by each service differs.  <u>See</u> Original Complaint, Ex. 3, Third Notice of Compliance Dated February 4, 2022, <u>Navy Seal 1 v. Biden</u>, No. 8:21-cv-2429 (M.D. Fla.)

(Doc. 1-3; Exemption Data) at 7–9, 12, 15, 19, 23.   As do the duration and practical consequences of medical and administrative exemptions.   See Chapa Decl. at 4 (Air Force); Marine Corps Implementation at 5; Response, Ex. 26: Declaration of Rear Admiral Gayle D. Shaffer (Doc. 31-25; Shaffer Decl.) at 3 (Navy).   Plaintiffs also make different allegations and point to different evidence regarding some branches' alleged opposition to granting any RARs. See Plaintiffs' Decls. at 39–40, 121, 145 (Air Force); id. at 48, 64 (Marine Corps); id. at 25, 69, 112 (Navy); id. at 102, 106, 108 (Department of Defense generally). Because of all of these factual differences, the claims against the different branches will likely require significantly different documentary evidence and witnesses.

Severance by branch of the military will mitigate the concerns of Plaintiffs and Defendants.   Severance by service will make these cases more manageable and reduce the risk of prejudice to Defendants by lowering the number of Plaintiffs in each case.   The largest new case will involve only six Plaintiffs, making it easier to highlight differences where relevant.   Severance by service also mitigates the fairness issues asserted by Plaintiffs.   This Order creates only a handful of cases instead of eighteen new cases.   In addition, severance by service promotes judicial economy.   While severance by individual Plaintiff could be warranted in the future for the religious exercise claims, the informed consent and APA claims appear to present identical issues for each

Plaintiff. Severance on a service-wide basis reduces the potential inefficiency of severing the informed consent and APA claims. Moreover, within branches of the military, the Court anticipates that much of the documentary evidence and many of the witnesses will be the same for the religious exercise claims. For example, in the newly created Air Force case, Defendants may produce a witness explaining the Air Force's RAR process. Such a witness would be common to all Plaintiffs in the Air Force but may not be competent to testify about the RAR processes in other branches. Consequently, for pre-trial case management and discovery, the Court will sever Plaintiffs' claims into cases organized by branch[13] of the military without prejudice to reconsidering individual severance at a later time.[14]

The Court must address one additional matter regarding severance. Defendants argue that Plaintiffs Capt. Paul Dee and Chief Warrant Officer-4 John Hyatt may pursue their claims only in individual actions because of the severance order in Crosby v. Austin, No. 8:21-cv-2730-TPB-CPT (M.D. Fla. Feb. 22, 2022) (Doc. 44). See Defendants' Supp. at 12–13. Captain Dee and Chief

---

[13] While recognizing that the Space Force is an independent branch of the military, the Court will keep the Space Force together with the Air Force in this action because the Department of the Air Force prescribes the same RAR process for both branches. See Streett Decl. at 2–3; see also Creaghan v. Austin, No. CV 21-0981 (CKK), 2022 WL 1500544, at *2 (D.D.C. May 12, 2022) ("All [Department of the] Air Force orders are applicable to the United States Space Force . . . as a constituent branch of the [Department] . . . .").

[14] For example, for the purposes of resolving dispositive motions or proceeding to trial, the Court may find that severance by individual Plaintiff is warranted.

Warrant Officer-4 Hyatt were named plaintiffs in <u>Crosby</u>, an action against the Secretary of Defense and the Secretary of the Navy, challenging the Vaccine Mandate on the same grounds as they do in this action. <u>See</u> Complaint for Declaratory and Injunctive Relief, <u>Crosby</u>, No. 8:21-cv-2730-TPB-CPT (Doc. 1) ¶¶ 1, 17, 21, 29, 32, 112, 120, 161, 167–70. On February 22, 2022, the Honorable Thomas P. Barber severed the claims of all plaintiffs and dismissed Captain Dee and Chief Warrant Officer-4 Hyatt's claims without prejudice. <u>Crosby</u>, No. 8:21-cv-2730-TPB-CPT (Doc. 44) (slip op. at 4). In the order, Judge Barber instructed the dismissed plaintiffs that their claims "may be commenced in separate individual actions in appropriate venues." <u>Id.</u> Defendants argue that the severance order in <u>Crosby</u> is the law of the case here. <u>See</u> Defendants' Supp. at 12–13.

The law-of-the-case doctrine requires following prior legal conclusions reached "in the same case." <u>Pope v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 1254, 1264 n.3 (11th Cir. 2014). This doctrine "is an expression of good sense and wise judicial practice," not a limit on the court's power. <u>Id.</u> (quoting <u>Venn v. St. Paul Fire & Marine Ins. Co.</u>, 99 F.3d 1058, 1063 (11th Cir. 1996)). The law-of-the-case doctrine applies to decisions of coordinate courts when the same case is moved "from one court to another by such means as transfer within a single system, realignment of appeals structures, removal, reference of specific questions by such means as abstention or certification, or remand after

removal."  Charles Alan Wright & Arthur R. Miller, 18B Fed. Prac. & Proc. Juris. § 4478.4 (3d ed.), Westlaw (database updated Apr. 2022).  When one federal court dismisses an action without prejudice, another federal court may "face the same case if a second action is filed;" but there is "little precedent in this area."  Id.

Despite expressing skepticism that this Court is formally bound by the decision in Crosby under the law-of-the-case doctrine, the Court finds that deferring to Judge Barber's ruling is appropriate as a matter of "good sense and wise judicial practice."  Pope, 752 F.3d at 1264 n.3.  On February 22, 2022, Judge Barber instructed Captain Dee and Chief Warrant Officer-4 Hyatt that they may pursue their claims in separate individual actions in proper venues. Instead of filing separate individual actions, on March 2, 2022, Captain Dee and Chief Warrant Officer-4 Hyatt filed this case jointly.  And, instead of filing in the proper venue, they initiated this case in the Jacksonville Division.  Under Local Rule 1.04(a)–(b) of the Local Rules of the U.S. District Court for the Middle District of Florida (Local Rule(s)), the proper division in which they should have filed was the Tampa Division because Captain Dee and Chief Warrant Officer-4 Hyatt are domiciled in Tampa.  See Plaintiffs' Decls. at 23, 56.  Allowing them to proceed jointly here would encourage severed parties to

seek inappropriate "do-overs" with a new judge. [15]   Therefore, the Court will sever Captain Dee and Chief Warrant Officer-4 Hyatt on an individual basis and direct the Clerk of the Court to create new individual cases for their claims in the Tampa Division.

## V.   Conclusion

In conclusion, the Court finds that the Motion is due to be denied as to Major Nykun and Major Harwood.   With regard to Lieutenant Junior Grade Bongiovanni, Commander Kins, and Lieutenant Commander Montoya, the Court will defer consideration of the Motion.   Because Technical Sergeant Mazure will be joined with the other Air Force Plaintiffs for whom venue is proper in this Court, venue is proper as to his claims as well.   Therefore, the Court will hear oral arguments as to his claims, either at a hearing on a new motion for preliminary injunctive relief or at a supplemental hearing on the currently pending Motion.   In addition, the Court determines that Plaintiffs should be severed into new cases organized by the branches of the military.   The Court will place Captain Dee and Chief Warrant Officer-4 Hyatt into individual cases in the Tampa Division in deference to the order in <u>Crosby</u>.   Accordingly, it is

---

[15]   Notably, Plaintiffs' counsel in this case also represented Captain Dee and Chief Warrant Officer-4 Hyatt in <u>Crosby</u>.

**ORDERED:**

1.  Plaintiffs' Motion for Preliminary Injunction (Doc. 13) is **DENIED, in part**, and **DEFERRED, in part**.

    A.  As to Tammara Nykun and Nicholas Harwood, the Motion is **DENIED**.

    B.  As to Brittany Bongiovanni, Lucian Kins, and Jacob Montoya, the Court **DEFERS** ruling on the Motion pending relevant developments in <u>U.S. Navy Seals 1–26</u>.

    C.  As to Joseph Mazure, the Court **DEFERS** ruling on the Motion.

2.  Plaintiff Joseph Mazure is **DIRECTED** to advise the Court on or before **June 2, 2022**, whether he intends to pursue preliminary injunctive relief through the existing Motion (Doc. 13) or through a new motion.

3.  Pursuant to Rule 21, the claims of the Plaintiffs in this action are **SEVERED** into separate actions against each military service.

4.  The following parties shall remain in the instant case:

    A.  Plaintiffs: ERIN DAVIS, TORREY HAMILTON, JOSEPH MAZURE, JOHN MCAFEE, TAMMARA NYKUN, and KYLE SINGLETARY.

B.   Defendants: LLOYD AUSTIN, III, in his official capacity as Secretary of Defense, U.S. Department of Defense, and FRANK KENDALL, in his official capacity as Secretary of the Air Force, Department of the Air Force.

5.   **Without charging a filing fee**, the Clerk of the Court is **directed** to open four new civil cases in the **Jacksonville Division** as follows:

A.   WILLIAM FREINCLE vs. LLOYD AUSTIN, III, in his official capacity as Secretary of Defense, U.S. Department of Defense, and CHRISTINE WORMUTH, in her official capacity as Secretary of the Army, Department of the Army.

B.   VIVIENNE DYAL, CHARLES MATHIS, NICHOLAS POEHLER, and ANDREW RUPP vs. LLOYD AUSTIN, III, in his official capacity as Secretary of Defense, U.S. Department of Defense, and KARL SCHULTZ, in his capacity as Commandant of the Coast Guard.

C.   NICHOLAS HARWOOD vs. LLOYD AUSTIN, III, in his official capacity as Secretary of Defense, U.S. Department of Defense, and CARLOS DEL TORO, in his official capacity as Secretary of the Navy, Department of the Navy.

D.   BRITTANY BONGIOVANNI, LUCIAN KINS, EDWARD MACIE, and JACOB MONTOYA vs. LLOYD AUSTIN, III, in his official capacity as Secretary of Defense, U.S. Department of Defense, and CARLOS DEL TORO, in his official capacity as Secretary of the Navy, Department of the Navy.

6.   The Clerk is directed to **direct assign** the new cases in the Jacksonville Division to the undersigned and the Honorable Monte C. Richardson, United States Magistrate Judge.

7.   **Without charging a filing fee**, the Clerk is **directed** to open two new civil cases in the **Tampa Division** as follows:

A.   JOHN HYATT vs. LLOYD AUSTIN, III, in his official capacity as Secretary of Defense, U.S. Department of Defense, and CARLOS DEL TORO, in his official capacity as Secretary of the Navy, Department of the Navy.

B.   PAUL DEE vs. LLOYD AUSTIN, III, in his official capacity as Secretary of Defense, U.S. Department of Defense, and CARLOS DEL TORO, in his official capacity as Secretary of the Navy, Department of the Navy.

8.   The Clerk is further **directed** to file a copy of all the docket entries from the instant case into the new cases, including a copy of this Order.

9.      Plaintiffs are **DIRECTED** to file amended complaints in the new

cases on or before **June 17, 2022**.

**DONE AND ORDERED** in Jacksonville, Florida, on May 24, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc30
Copies to:

Counsel of Record